998 F.2d 1009
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Charles Edward HOLLEY, Plaintiff-Appellant,
v.
COOK ENTERPRISES, INCORPORATED, t/a Burger King Restaurant,
Defendant-Appellee.
 No. 92-2079.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 6, 1993.
July 6, 1993.
 
 Appeal from the United States District Court for the District of South Carolina, at Charleston. David C. Norton, District Judge. (CA-90-2299-2-18)
 Argued: Jessie James, Jr., Washington, D.C., for Appellant.
 Stephen P. Hughes, Howell, Gibson & Hughes, Beaufort, South Carolina, for Appellee.
 D.S.C.
 AFFIRMED.
 Before RUSSELL and WIDENER, Circuit Judges, and CLARKE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 A jury awarded Charles Edward Holley ("Holley") $65,000.00 in damages for his injuries resulting from a slip and fall at a Burger King Restaurant in Hardeeville, South Carolina ("Burger King"), owned and operated by Cook Enterprises, Incorporated ("Cook"). Holley moved for a new trial on the ground that the damages award was inadequate. Citing the conflicting testimony regarding the severity and cause of Holley's injuries, the district court denied the motion. Holley now appeals. Finding no error, we affirm.
 
 I.
 
 2
 On September 2, 1989, Holley, a correctional officer at the Lorton Correctional Institute in Northern Virginia, was traveling by car to Georgia. While driving, Holley stopped at Burger King for lunch. Inside Burger King, Holley apparently slipped on a puddle of water from a leaking air conditioner and fell to the floor.
 
 
 3
 After the fall, Holley complained of severe pain in his back and shoulder and numbness in his leg. Several patrons advised that he not be moved. Approximately thirty minutes later, paramedics arrived. They placed Holley on a hard stretcher and transported him to Live Oak Hospital in Ridgeland, South Carolina ("Live Oak"). At Live Oak, the doctor reviewed several X-rays and concluded that Holley may have had a broken pelvis. Because Live Oak was not equipped to handle a broken pelvis, the doctor sent Holley by ambulance to Memorial Medical Center in Savannah, Georgia ("Memorial"), where he was seen by Dr. William N. Wessinger ("Dr. Wessinger"), an orthopedic surgeon.
 
 
 4
 Dr. Wessinger reviewed the X-rays from Live Oak and some additional X-rays made at Memorial and concluded that there was no pelvic fracture. Rather, Dr. Wessinger concluded that Holley had a fleck of calcium in his left groin which probably occurred when a muscle was torn years earlier. Dr. Wessinger also ordered a CAT scan. Upon review of the results, Dr. Wessinger concluded there was minor bulging in one disc of the lumbar spine, but the bulging was within normal limits. He also confirmed that Holley's pelvis was not broken. Dr. Wessinger did, however, diagnose a contusion or bruising of the sacrum (the back of the buttocks). The next day, Dr. Wessinger released Holley with specific instructions regarding the trip home and advised that he see an orthopedic surgeon when he got there.
 
 
 5
 The day after his release from Memorial, Holley returned to Northern Virginia. Upon arrival, he proceeded directly to the Veterans' Administration Hospital at Fort Meyer, Virginia (the"VA"). The doctors at the VA referred Holley to Walter Reed Hospital ("Walter Reed"). That evening he went to Walter Reed, but the doctors told him to return the next day for X-rays. After the X-rays were taken, the doctors at Walter Reed told Holley that he had a bulge on his spine that could require immediate attention and treatment by a specialist.
 
 
 6
 Less than a week after his fall, on September 8, 1989, Holley saw Dr. Rida Azer ("Dr. Azer"), an orthopedic surgeon. At that time, he complained only of low back pain. Holley saw Dr. Azer or one of his associates several times over the next year. Over the course of Holley's treatment, Dr. Azer conducted clinical examinations and specialized radiological tests including X-rays, CAT scans, and magnetic resonance imaging.
 
 
 7
 On September 10, 1989, two days after his initial visit to Dr. Azer, Holley went to the emergency room at Jefferson Hospital in Alexandria, Virginia, complaining of severe pain in his shoulder. Both the emergency room nurse and doctor indicated on the medical records that Holley stated he was bowling when the pain began.[1] Dr. Susan Maeda ("Dr. Maeda"), a radiologist, reviewed an X-ray of Holley's shoulder and concluded there was no fracture, but there were cystic changes at the distal end of the clavicle, which she associated with degenerative arthritis.
 
 
 8
 On September 15, 1989, Holley again returned to Dr. Azer's office. This time he complained of pain in his lower back and shoulder. Dr. Azer subsequently concluded that Holley had a damaged disc and lumbar disc syndrome resulting from his slip and fall. Moreover, Dr. Azer concluded that Holley had a torn rotator cuff in his shoulder.
 
 
 9
 Approximately one month later, on October 18, 1989, Holley was admitted into Jefferson Hospital where a lumbar myelogram was performed. He also saw a neurosurgeon, Dr. Harold Goald ("Dr. Goald"), who became Holley's treating physician for his lumbar spine problems. Dr. Azer and Dr. Goald agreed that Holley had a damaged lumbar disc.[2] On January 9, 1990, Dr. Azer operated on Holley's shoulder to repair the rotator cuff damage. Holley has apparently progressed well from the surgery, but Dr. Azer gave him permanent limitations on activities such as heavy lifting and overhead use of the hands.
 
 II.
 
 10
 After a trial lasting several days, the jury found Cook negligent and awarded Holley $65,000.00 in damages. Holley moved for a new trial on the ground that the damages award was inadequate. The district court found the jury's award was neither against the weight of the evidence nor the result of prejudice and denied Holley's motion. Holley now appeals, arguing that a miscarriage of justice occurred given the wide discrepancy between the $65,000.00 in damages awarded by the jury and the $6,913,411.10[3] in damages claimed by Holley.
 
 
 11
 The denial of a motion for a new trial made on the grounds of inadequate damages is discretionary with the district court and is not reviewable absent an abuse of discretion. Bryant v. Muskin Co., 873 F.2d 714, 716 (4th Cir. 1989).
 
 III.
 
 12
 In our view, the district court's denial of Holley's Motion for a New Trial was not an abuse of discretion. At trial, Holley claimed three primary areas of injury: his shoulder, his back, and his groin. The evidence conflicted as to the severity, existence, and cause of those injuries.
 
 
 13
 First, the severity of the groin injury was disputed. Shortly after his fall, the doctor at Live Oak suspected Holley may have had a fractured pelvis and therefore sent Holley to Memorial for further diagnosis. At Memorial, Dr. Wessinger noted that Holley complained only of pain right over his sacrum, but denied having pain in his legs, scrotum area, or arms. Dr. Wessinger reviewed the medical evidence and concluded that Holley's pelvis was not fractured, but that he had a small calcium deposit in his left groin caused by a muscle being torn years earlier, not by this fall. Dr. Wessinger did, however, diagnose a bruising of the sacrum. Given this medical evidence, the jury could have reasonably concluded that any pain Holley experienced in his groin area was not permanent and resulted only from the bruising of the sacrum.
 
 
 14
 Moreover, the medical testimony concerning the existence of the back injury was conflicting. At Memorial, Dr. Wessinger reviewed the results of a CAT scan and concluded that while Holley did have a minor bulging in a disc of the lumbar spine, the bulging was within normal limits. Furthermore, Dr. Maeda reviewed a post-myelogram CT scan taken on October 18, 1989, and concluded that Holley had mild bulging in the same lumbar disc. Thus, the jury could have reasonably concluded that any pain Holley experienced in his back was the normal result of a mild bulging of the lumbar disc rather than lumbar disc syndrome caused by this fall.
 
 
 15
 Finally, the cause of the shoulder injury was disputed. Holley testified that when he left both Live Oak and Memorial, his arm was in a sling because of the pain in his shoulder. However, Dr. Wessinger stated that Holley's only complaint was pain in the sacrum. Moreover, when Dr. Azer first saw Holley on September 8, 1989, Dr. Azer noted only complaints of pain in the lower back. Although, Holley did complain about shoulder pain on September 10, 1989, when he went to Jefferson Hospital, the notations in the medical records indicate that the pain was experienced while bowling. In any event, Dr. Maeda concluded that the shoulder pain was due to degenerative arthritis which first occurred before the slip and fall. Finally, Dr. Azer first noted complaints of pain in the shoulder on Holley's second visit on September 15, 1989 (after the alleged bowling incident). Therefore, the jury could have reasonably concluded that the pain Holley experienced in his shoulder was caused by something other than his slip and fall, such as bowling or degenerative arthritis, and therefore the surgery performed by Dr. Azer was not attributable to the slip and fall.
 
 
 16
 Given the conflicting testimony concerning the severity, existence, and cause of Holley's injuries, the jury could reasonably have concluded that $65,000.00 was appropriate compensation for any injuries properly attributable to the slip and fall. Finding no abuse of discretion, the decision of the district court to deny Holley's Motion for a New Trial is therefore
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 Holley disputes that he was bowling. Instead, he claims he said the pain felt like a bowling ball hit his shoulder
 
 
 [2]
 Surgery for the disc had not been performed as of the trial. Dr. Goald did not testify nor was a de bene esse deposition taken or read at trial
 
 
 [3]
 Holley arrives at this figure as follows: Current medical expenses, $25,156.15; Future medical expenses, $50,000.00; Travel expenses, $575.00; Current lost earnings, $135,756.00; Future lost earnings, $1,628,017.20; and Pain and suffering, $4,938,150.80. The remaining $135,755.95 is unaccounted for